STATEHOOD REPUBLICAN PARTY ET AL., Petitioners, *v.* COMMONWEALTH BOARD OF ELECTIONS, ETC., Respondent.

No. 13.      Decided November 24, 1967.

*Arturo Ortiz Toro, Ángel Roberto Díaz, Nicolás Nogueras, Jr., Víctor M. González Mangual, Julio Riera Morales, Nicanor Martínez Vázquez, Antonio Quirós Méndez* for petitioners. *José C. Aponte, Secretary of Justice,* and *Rafael A. Rivera Cruz, Assistant Secretary of Justice,* for respondent. *Jaime A. García Blanco* and *Víctor M. Sánchez Fernández* for intervener, Opposition and Renewal Party (formerly The People Party).

Decision of MR. CHIEF JUSTICE NEGRÓN FERNÁNDEZ.

This is an appeal brought before the Chief Justice under the provisions of § 13(d) of the Election Law, as amended by Act No. 3 of October 5, 1965, Second Special Session—

16 L.P.R.A. § 19—by the representative of the Statehood Republican Party in the Commonwealth Board of Elections, against a decision of the General Supervisor of Elections, made pursuant to the provision of § 12 of the Election Law, as amended by the aforesaid Act No. 3 of October 5, 1965—16 L.P.R.A. § 13.

The Board was granted time to answer the motion entitled "Petition for Review" filed by the petitioner, or to allege anything with respect thereto, and the Chief Justice requested the Board to send to this Court, in addition to other papers already sent by the Supervisor, various documents or certified copies thereof which were timely sent. The Board appeared, represented by the Secretary of Justice, and filed a motion entitled "Motion to Dismiss." The parties were summoned to hear their arguments on the aforesaid motion, and the merits of the petition for review, which hearing took place on the 15th of the present month. On said day the petition for intervention was filed by the Opposition and Renewal Party (formerly The People Party), and there being no objection from the parties, the intervention of said political group was admitted at the hearing.

By the decision appealed from—which as provided by § 12 of the Election Law itself is considered as the decision of the Commonwealth Board of Elections—it was agreed, among other particulars, with the dissenting vote of the representative of the Statehood Republican Party member of said Board, that "under the direction of the Supervisor, of each 25 petitions for registration of a group which requests registration as a party, one be chosen at random and the signature of that application be compared with that of the application for registration of the applicant, and that the Supervisor be the one to render the corresponding report to the Board."

The aforesaid agreement is part of a proposition having three paragraphs made by the Supervisor to the Board at

the meeting held October 25, 1967, preceded by a recital of the Supervisor explaining his position and reasons for not obeying a previous agreement of the Board—adopted unanimously at a meeting of October 18, 1967, since it received the favorable votes of the two members of the Board of the political parties represented therein. Said recital and proposition, as it appears from the transcript of the meeting of October 25, was the following:

"At the meeting held by the Commonwealth Board of Elections, on October 18, 1967, the representatives of the political parties, Mr. Samuel R. Quiñones and Mr. Luis Ramos Rodríguez, agreed that it was necessary to verify the signatures which appeared in all the petitions for registration of candidates which had been accepted from the political groups in process of registration with the original copy of the petition for registration of the voter which appears in the records of the Commonwealth Board of Elections.

"I stated in the record that in my capacity as General Supervisor of Elections of the Commonwealth of Puerto Rico, I would not comply with said agreement because I believed it was void and contrary to law.

"My position today is the same one I assumed on that day since I sustain that an agreement of that nature does not lead anywhere, and that it is impossible to be put into practice. It is tantamount to not giving validity and purity to notarial attestation, and it tends to establish that the Commonwealth Board of Elections shall be the only body of our government to verify signatures, which have been given before notaries who act in their capacity as officers vested with the authority to administer oaths and to attest to the facts and data which appear in a document. It is also tantamount to doubting the honorability and integrity of those Puerto Rican citizens to whom the Board itself has delegated those powers, since Act No. 3 approved in the 1st Special Session of October 5, 1965, which amended § 37 of the Election Law, establishes in its § 2, Paragraph C:

'Each and every notary designated by the Commonwealth Board of Elections under these provisions shall act as a delegate of said board in taking the corresponding oaths.'

"To delegate in our language means:

"To give to a person or entity—a person or entity entrusts to another the jurisdiction which it has because of its dignity, *to render services and confers on him its representation.*'

"It is impossible to put that agreement into practice because the Board lacks technical personnel (calligraphers) to determine whether a signature and another on certain documents are from the same person and it is a fact that the signatures which appear in our petitions for registration on the date of our registration as voters many years ago differ from the ones we have today.

"Conscious, however that this body was created for the principal purpose of guaranteeing the purity of the election procedures, and that all of us who are part of the same must join our strength to achieve harmony and understanding, and to make this body the solid base on which to build a government whose political power shall flow from the people who shall exercise its genuine, free and democratic will, and where the free participation of the citizen be guaranteed in the collective decisions, conscious of all this, I have believed it convenient and advisable to summon you to seek to reach an agreement which is reasonable, just, and equitable.

"I wish to set forth that my position is invariable in the sense that signatures attested to before the notaries we have authorized as delegates of the Board are unquestionable, which means that in case there is a difference between the signature of a person and another signature of the same person in the petitions, the benefit of the doubt would be given in favor of the voter and the validity of the petition for registration of candidacy.

"I have a proposition to make to the Board, which consists of three paragraphs and which I believe satisfies fully what we have been discussing in the meeting we formerly held and which may lead to an agreement which is satisfactory to you as well as to the General Supervisor of Elections, and it reads as follows:

"1.—That the Board—That it be determined, as it has always been, that the Commonwealth Board of Elections has never had the purpose of barring the registration of the New Parties.

"2.—That under the direction of the Supervisor, of each 25 petitions for registration of a group which requests certification as party, one be chosen at random and the signature of that

petition be compared with the signature of the petition for registration of the petitioning voter, and that the Supervisor be the one who submits the corresponding report to the Board.

"3.—That in the precincts where it has been established that there was no employee of the Popular Democratic Party in the examination of the petitions for registration of the Opposition and Renewal Party, the Supervisor should appoint one or more employees of said party to accomplish said examination.

"Those are the three propositions which I make to the Board, so that this matter be elucidated in the best manner possible, and we be able to guarantee to the people of Puerto Rico an authentic examination of these petitions for registration, and which would satisfy the three of us.

"I wish to add that in connection with this third proposition, that in the precincts where it has been established that there was no employee of the Popular Party, the same be applied to the Statehood Republican Party, in case there is a precinct where a member employee of the Statehood Republican Party did not intervene in the examination of the petitions of said precinct. What I wish to say is that this embraces both parties because I did not remember the fact that Mr. Salvador Díaz pointed out to me, in the sense that there was a precinct—and there could be more after verification—in which you did not have representation, and in that case you would receive the same guarantee as is provided herein."

The agreement of the Board of October 18, to which the Supervisor refers in his recital transcribed above, has in fact its origin in his original contention made at the meeting held on September 22, 1967, when he brought to the consideration of the Board the matter of registration of the political group named Opposition and Renewal Party. Said meeting was conducted, insofar as pertinent, in the following manner:

"MR. CHAIRMAN: The first matter I wish to bring to the consideration of the Board is that related to the Opposition and Renewal Party, which has already presented the number of petitions required by law for its recognition. This party is the party which was named People Party, and on August 22,

1967, we decided that that name was too similar to the name which the principal party of the Majority in power had, and that the emblem it had and used violated the Election Law in its §§ 37 and 32. Said political group, being informed of our decision, communicated to us the change of name and emblem: The People Party changed its name to Opposition and Renewal Party, and instead of the two hands as emblem, they adopted a rising sun.

"I wish to inform, for the purposes of the record, that I have with me a report which I am going to give to the Members of the Board, concerning the number of petitions that this political group has filed in the different election precincts of Puerto Rico, and in which precincts they have filed more than five percent (5%) of the required petitions. This political group, for purposes of the record, has filed 42,264 legal petitions in more than one-half of the election precincts of Puerto Rico, and also that five percent (5%) is covered legally, as provided by § 14 of the Election Law, taking into consideration those precincts which have met the requirement of law. The number of legal petitions required for a political group to acquire status as political party is five percent (5%) of the totality of votes for the office of Governor; that is 41,572, and this group has, then, exceeded that number of required petitions, which means that it already has the status of party by petition, pursuant to the Law.

"MR. LUIS RAMOS RODRÍGUEZ: Mr. Chairman, I have heard Mr. Chairman pronounce the word 'filed.'

"MR. CHAIRMAN: Filed and processed. That report, colleague, refers to the legal petitions already accepted, because they have exceeded that number.

"MR. LUIS RAMOS RODRÍGUEZ: Does the Supervisor permit me a question?

"MR. CHAIRMAN: Why not. Go on.

"MR. LUIS RAMOS RODRÍGUEZ: This party, Opposition and Renewal Party, did it meet all the requirements of § 37 of the Law?

"MR. CHAIRMAN: Yes, sir. That is, it met the requirement of presenting petitions of voters duly registered in the precincts, etc.

"MR. LUIS RAMOS RODRÍGUEZ:. That is, they filed the names of the candidates in advance before the: Commonwealth .Board of Elections, they filed them in advance, and then the Board, after complying with the requirements of § 37, then the Board approved a number of notaries from those which were submitted to it. I mean that that is one of the. requirements in order to become a party.

"MR. CHAIRMAN: That's right. They complied with the legal requirements provided in § 37. We took note of the legal petitions which have been accepted, precinct by precinct, in case an investigation is launched at any time, of any nature. That is at the disposal of the Members of the Board.

"MR. LUIS RAMOS RODRÍGUEZ: Another question. These same requirements, established by law, for this party to become a political party, for this group to become a political party, will those same requirements be required of any other group or political party in order to become a political party in Puerto Rico? ·

"MR. CHAIRMAN: Correct.

"MR. LUIS RAMOS RODRÍGUEZ: Thank you very much.

"MR. SAMUEL R. QUIÑONES: I wish to say that, of course, I understand that when the Chairman of the Board,. General Supervisor of Elections states that the party referred to is duly registered, he is expressing his opinion and proposing something to the Board, because it is the Board the one which can say if that is true or not. The Board is the body called upon to pass upon any matter of this type. This is a requirement. It is his duty, as Chairman, to keep the Board informed.·

"I wish to say that of course I did not know that this matter was going to be dealt with here, today. It is first news to me that this was the subject to be dealt with today. It was in the Agenda of the business to be accomplished by the Board; only that. Now I know that my colleague Ramos, more than I, is going to agree with me: I must, for certain reasons, in· fulfillment of my duty as representative of a party in this Board, but even more, as public officer, examine the documents before the Board to see what has been the administrative procedure, and make all the indications in·cases of this nature, but without

this resulting in any impairment to the clear and efficient administration of the Board.

"I request, as public officer and in order to comply with my duty as Member of this Board, to be given time to study those documents.

"MR. CHAIRMAN: I have no objection. What I wish to enter in the record is how this work has been done administratively. That is, how this has been accomplished, because it is wise to enter it in the record for the benefit of Colleague Quiñones, and more for the benefit of Colleague Ramos Rodríguez, and much more for the benefit of the people of Puerto Rico, so that it be known how the work here in the Board is done.

"We receive those petitions for registration. The first thing we note is whether they are duly authorized notaries for administering an oath. Whether they have been filed here within the term provided by law. Then those petitions are taken to the workroom and are examined one by one, to verify whether the voter who signed that petition is duly qualified as voter registered in the precinct to which he says he belongs, etc., and after all the data are verified the petitions which are legal are accepted, those which do not meet any requirement of law are revised and returned to the body or organization which presented them, and that is the procedure which is followed until they present the number of legal petitions required by law. That is the procedure which has always been followed heretofore in all the organizations which seek to obtain their registration of candidates, and that is what has been done in this case.

"When this political group began its registration we had members of both parties performing that work: of the Popular Democratic Party and of the Statehood Republican Party, but in approving Act No. 1 of December 23, 1966, the Plebiscite Act of 1967, well, naturally, they had to devote themselves to the special work of the Plebiscite.

"What I have done is to inform the Board of the facts, and naturally, the Board is the one which must request what it believes most convenient. Our colleague has made a motion requesting a reasonable time to examine the documents, and we tell him to select the shortest period and the officers he wishes in order to study those documents.

"MR. LUIS RAMOS RODRÍGUEZ: Mr. Chairman.

"MR. CHAIRMAN: Go on.

"MR. LUIS RAMOS RODRÍGUEZ: I heard the statements of Mr. Samuel R. Quiñones, as well as the statements of the Supervisor as to the manner in which the petitions for registration were processed, where he told us that it was verified whether the voter who signed it was the same voter of the precinct indicated in his petition for registration. I now ask the Supervisor whether or not, as part of that process, that petition for registration is compared with the petition of the voter when he registered for the first time, to see whether the signatures coincide, and whether he knows how to read and write, and whether he appears signing a petition now, when he said in his former petition that he did not know how to read or write. Whether that is made in each and every one of those cases.

"MR. CHAIRMAN: Yes, sir. That is so. That is one of the procedures. That is one of the principal things done to verify whether in fact it is the same person who has signed.

"MR. LUIS RAMOS RODRÍGUEZ: Then, Mr. Supervisor, I agree and I second Mr. Quiñones, colleague of the Board, in his request, because in representation of the Statehood Republican Party I also wish to make the corresponding investigation with respect to that particular and especially since I take possession of this office today in the Commonwealth Board of Elections. Sufficient time should be given to make the corresponding examination."

In a meeting held the following October 6, the Supervisor again brought up for consideration of the Board the question concerning the acceptance of the Opposition and Renewal Party, reiterating his position that said political group had acquired party status by petition, and sustaining his opinion that in the examination of the petitions for registration of candidates it was not proper to verify the signatures of the petitioners with the signatures in their petitions as voters. The report prepared by the Supervisor— which was requested of him at the meeting of September 22 —concerning the administrative procedure followed in the

examination of said petitions by the Board personnel,[1] was included in the record of the meeting. Said report reads thus:

"COMMONWEALTH OF PUERTO RICO
COMMONWEALTH BOARD OF ELECTIONS

SAN JUAN, PUERTO RICO

September 29, 1967

*REPORT*

To:     Mr. Samuel R. Quiñones

From:   Commonwealth Board of Elections

On:     Examination of the Petitions for Registration of the Group Opposition and Renewal Party

"This group filed petitions for the Culebras precinct on September 17, 1965, with the name of Social Christian Party, and they presented an emblem of two hands vertically crossed. Later they changed their name to Social Moral Party on October 18, 1965, later to People Party on July 20, 1966, and lately they adopted the name of Opposition and Renewal Party with the emblem of a Rising Sun, on August 25, 1967.

"They filed the acceptances in or before filing the petitions for registration.

"As they filed the petitions for registration in the Commonwealth Board of Elections, they were handed over to Mr. Ángel Rengel, Officer in charge of Petitions for Registration of New Parties, who distributed them in the room among a group of employees of the Democratic Popular and Statehood Republican Parties, to investigate, first of all, whether the petitioners had signed for other groups, and in this case the ones repeated with

---

[1] The aforesaid report was received by the representative of the Popular Democratic Party in the Board only two days before the meeting of October 6, as shown in the record, and it was given during that same meeting to the representative of the Statehood Republican Party.

other groups were rejected, and, in the second place, to investigate whether the persons were responsible voters of the precinct indicated in the petition for registration. The investigations are made by a pair of employees for each party, and each one of the petitions, whether or not of voters, is signed with the initials and number of the employees who made the investigations.

"The percentage exceeded 12% since they filed about 52,000 petitions, and of these 45,017 were accepted as legal, but of these 2,753 were from precincts which have not completed five percent or more, and therefore, they have 42,264 in precincts wholly registered and this is sufficient since the Law requires 5% of 831,451 that is 41,572 in half of the 87 precincts. They have 42,264 in 75 precincts, which exceeds the requirements of law.

Respectfully submitted,

ERNESTO MIERES CALIMANO

General Supervisor
of Elections"

In the course of the meeting of October 6 the following dialogue took place, relating to the scope and administrative procedure followed in the revision of the petitions:

"MR. LUIS RAMOS RODRÍGUEZ: I ask Mr. Supervisor, the second question: Does the Supervisor believe that the petition for registration of a voter for a new party is legalized only by simply checking the list to see whether he is a voter of the place where he swears he is a voter?

· "MR. CHAIRMAN: Yes, sir, I believe that. It is sufficient to examine a petition, to verify that that petition complies with all the requirements of law, all the blanks of the petition have been filled, and the voter is checked in the corresponding list, he is now a legal voter, so that the Board has nothing else to do. That is a completely valid petition. In the first place, because the petitions for registration are sworn to before the judges, who are officers authorized to administer oaths; and in the second place, because if it is not the judges, it is before notaries, the notarial attestation being sufficient.

"Therefore if we receive a petition for registration from voter Luis Rivera Rodríguez, who says to be son of Juan, and María, and born in Aibonito on Such a Date, and his registration appears in the Aibonito precinct, and we verify this, that is sufficient for us, and that is a legal petition; we need not search anymore.

"MR. LUIS RAMOS RODRÍGUEZ: And that Notarial Attestation to which Mr. Supervisor refers, does that Notary attest that he is personally acquainted with that voter?

"MR. CHAIRMAN: No."

Finally, and after a prolonged debate, the representative of the Statehood Republican Party made the following proposition:

"MR. LUIS RAMOS RODRÍGUEZ: Mr. Supervisor, in order to avoid that a different line of action be taken in the future, for the purpose of the legislative record of having transferred the registration of new parties to the Commonwealth Board of Elections, I propose, Mr. Chairman, that from this day on, every petition for registration of new parties be checked, as an indispensable requirement, with the first petition for registration of the voter, to see whether that is the signature and to verify everything in accordance with the petition for registration of the voter whose files are here in the Commonwealth Board of Elections, to avoid that frauds be committed in the registration of new parties.

"That is my official proposition here today in the Commonwealth Board of Elections."

This proposition remained pending for study and consideration in a subsequent meeting. Immediately the representative of the Statehood Republican Party filed before the Board an extensive document of objections and challenges against the petitions for registration of the political group named New Party, requesting the rejection of all the petitions filed till then, sustaining that due to the substantial deviations of the procedure provided in § 37 of the Election Law evidenced by the alleged facts and the petitions for registration, the same were void and lacked legal value, and there-

fore they should be cancelled or returned to the interested parties.

In the following meeting of the Board, which was held on October 18, the representative of the Popular Democratic Party voted in favor of the proposition made at the meeting of the sixth by the representative of the Statehood Republican Party, which had remained pending for voting. For said reason the Supervisor expressed himself thus:

"MR. ERNESTO MIERES CALIMANO: Well, anyway, I want it to be entered in the record that the Supervisor does not subscribe to that agreement which the Commonwealth Board of Elections decided on, because he believes that it is not an agreement in accordance with law. I cannot appeal because the law itself contemplates that when there is an agreement of the representatives of the political parties that is the agreement of the Board."

Later on he expressed: "I am not going to comply with that agreement of the Board. Well, administratively I am not going to comply with it because it is a void matter, without any validity and which I do not sustain." And at another time: "I do not subscribe to that . . . . Nor am I going to do it either. And I am going to give definite orders that it should not be done."

In that same meeting the representative of the Statehood Republican Party made specific reference to cases of alleged irregularities in the registration of the Opposition and Renewal Party in various precincts of the island. Subsequently, on October 23—and in support of his challenge and request for rejection of the petitions for registration of the sixth of said month—he filed before the Board a Complementary Report on alleged violations of the law, irregularities, and fraud in the registration of the Opposition and Renewal Party and the New Party.

It was on October 25—as it has been formerly indicated—that the next meeting of the Board took place, in which the

Supervisor made his proposition of verifying the signatures by taking one of each twenty-five petitions for registration of candidates at random and checking it with the petitions for registration as voters of the corresponding petitioners, which was finally adopted, as decision of the Board, with the dissenting vote of the representative of the Statehood Republican Party, the following day, October 26, in the continuation of the meeting of the former day.

That is the decision object of the present appeal.

Although in his statement of objections and challenge of October 6, 1967, the representative of the Statehood Republican Party requested the rejection of the petitions for registration at that date presented before the Board by the New Party on the ground among others, of the lack of the *jurat*, separate from the certificate to which § 37 of the Election Law refers, setting forth at the same time the insufficiency of the certificate in said petitions to establish from its face the identity of the petitioner as a valid act of the public faith beyond that which the petitioner himself testified as to his name, it was at this very meeting where said document was filed, that moments before doing so he proposed the verifying of the signatures of the petitions for registration of the candidates with the original petitions of the voters. This proposition was, as we have seen, the one adopted in the following meeting of the 18th. Although the question of nullity was incorporated by appellant in his petition for review in making his motion of October 6 part of his petition, his proposition of verifying signatures does not seem to be consistent with his contention of complete nullity because of the fatal defect alleged, absence of the *jurat*, and the insufficiency of the certificate. But as an acknowledgment of the interest shown by him that the legal requirements, as he understood them, be fully complied with, in order to insure the proper identity of the petitioner with the voter who appeared with the same name in the election lists, it seems

proper to set forth the possibility that he believed that the Board was not the appropriate forum to argue the contention of absolute nullity, based on the absence of the *jurat* and insufficiency of the certificate, or that he considered that the verifying of the signatures proposed as administrative action of the Board would convalidate, if the signatures coincided, the defects of total nullity which he pointed out.

In any event, in the limited field of the remedy of appeal provided by § 13 (d) of the Election Law before the Chief Justice, it is not appropriate in this case to make pronouncements of a judicial character, particularly when the powers of the Commonwealth Board of Elections, in its authority of direction and inspection of the elections of Puerto Rico, belong rather to the field of the administration of the Law, and not to the determination of facts which could affect the rights of the individual voter, in which case its function is governed by the statutory proceeding provided in the Law, and by the judicial review which is provided for particular cases.

The decision of the Board object of this proceeding, because of its nature, belongs to the field of its administrative functions. Although the public duty of the Board, as a body, and of each one of its members individually, including the General Supervisor of Elections, who is its Chairman, in the different capacities of his legislative mission, is to see that the Law is complied with, in a government of laws and not of man, we must not overlook the limitations which in protection of the citizen's fundamental right to vote are implied and are a part of the Legislative Power itself in that which concerns the reasonability of its regulation of the election process as well as of the bodies and officers in charge of the administration of the regulatory laws of that procedure.

It is a well-settled rule that the requirements which in the exercise of the Police Power of the State are established by the Legislative Power to regulate the nomination of candi-

dates and the registration of parties by petition must be substantially complied with, and that serious deviations or noncompliance with said requirements, if they are not unreasonable, arbitrary or confiscatory of the right to vote, can produce the unadmissibility of said nominations or petitions for registration, when timely challenged in the appropriate court.

In view of the objection of the respondent Board that the representative of the Statehood Republican Party did not comply, in turn, with the legal requirement that any appeal from a decision of the General Supervisor of Elections to the Chief Justice should be taken in the same meeting in which the decision appealed from was made and before the meeting is adjourned—which was not done, or even timely attempted in this case, since after the adoption of the agreement against which petitioner herein voted and made no contention or announcement before the Board as to his purpose or wish to appeal—there is no other alternative than to agree with the opinion of the Secretary of Justice that the appeal does not lie because not even a mere announcement was made of the intention to appeal, during the meeting nor before adjournment, even though no grounds of fact or of law were stated in support of that proposition. There is a total absence of any showing in the record of the meeting of October 26 that could give the Chief Justice grounds for considering that there was a substantial compliance with the requirement of the Law in that respect even construing the statute with every intendment in appellant's favor.

From the transcript of the record of the meeting of October 26 it seems that when the representative of the Statehood Republican Party delivered his vote on the proposition of checking the signatures in one of each twenty-five petitions for registration of candidates, as it has been expressed before, he filed a written explanatory vote with the grounds in which he based his vote against said agreement.

Right afterwards petitioner herein began to raise other contentions before the Board, which did not reveal any wish, purpose or intent of appealing from the agreement adopted.

After the Chairman of the Board announced that his proposition to make a "Spot check," in the manner already mentioned, had been approved, appellant addressed himself to the latter in the following manner:

"MR. LUIS RAMOS RODRÍGUEZ: Mr. Chairman: Since you have finished with the first matter, I have another one to bring before the Board."

Appellant then continued and when he finished with the matter to which his former words referred to, the Chairman of the Board asked: "Any other matter?" to which appellant immediately answered "Yes, certainly" and he continued with other observations related to the meeting of the day before.

■ Later he continued with other observations and contentions, and although there was a moment in which the Chairman of the Board expressed that he had a matter to attend to, we cannot agree with appellant in that the meeting was finished abruptly by the Chairman, and that this precluded him from complying with the requirement of the Law of appealing in that same meeting before adjournment. This being a requirement of a jurisdictional nature, his motion entitled *Notice of Intention to Appeal* filed subsequent to the adjournment of the meeting, although that same afternoon, makes the dismissal of the petition imperative. It would have sufficed that, in order to protect his right to appeal under the circumstances of this case, after the adoption of the agreement he voted against, he would have announced his intention to appeal although he would not have set forth— as he did not set them forth in his motion subsequently filed— his legal grounds, because the explanatory vote he filed in writing when voting against the aforesaid agreement con-

tained the reasons and fundamental objections in opposition thereof.

In view of the foregoing the petition is dismissed.

It was so ordered as witnesses the signature of the Chief Justice.

(s) Luis Negrón Fernández

*Chief Justice*

I attest:

(s) Joaquín Berríos
*Clerk*